**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| THE HUNTINGTON NATIONAL BANK, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civ. No. TDC 25-04053 |
| | * | |
| AYODEJI ROTIMI, | * | |
| HH INTERNATIONAL LLC, | * | |
| | * | |
| Defendants. | * | |
| | * | |

*******

## REPORT AND RECOMMENDATIONS

This "Report and Recommendations" addresses the "Motion for Default Judgment Against Defendants" filed by Plaintiff The Huntington National Bank. (ECF No. 16, "Motion").

Pursuant to 28 U.S.C. § 636 and Local Rule 301 (D. Md. 2025), the Honorable Theodore D. Chuang referred this matter to me to author a report and to make recommendations. (ECF No. 19). No response has been filed and the time for responding has passed. *See* Loc. R. 105.2. I have considered that fact, and having reviewed the Motion, I do not believe that a hearing is necessary. *See* Loc. R. 105.6. For the reasons set forth below, I ultimately recommend that Plaintiff's Motion be **GRANTED IN PART, DENIED IN PART**, and that damages be awarded as set forth herein.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Factual Background

On December 10, 2025, The Huntington National Bank ("the Bank" or "Plaintiff") filed a Complaint alleging that Defendants Ayodeji Rotimi and HH International LLC ("Defendants") violated Maryland law by breaching four contracts. (ECF No. 1, "Complaint," ¶¶ 20–31).

Specifically, the Bank alleges that Defendants did not perform their obligations under two Unconditional Guarantee agreements and two Commercial Guaranty agreements that Defendants signed to obtain loans ("the Notes") for Retail Equity, LLC ("Borrower"). (Complaint, ¶¶ 12–13).

On March 30, 2023, the Bank issued a non-revolving line of credit in the amount of $1,310,000 ("NRLOC Note #1") and a revolving line of credit in the amount of $300,000 ("RLOC Note") to the Borrower. (ECF Nos. 1-1, 1-3). Defendant Rotimi and Defendant HH International LLC both executed two agreements guaranteeing payment—one Unconditional Guarantee and one Commercial Guaranty agreement each. (ECF Nos. 1-4, 1-5, collectively, "the Guarantee Agreements"). Defendants are jointly and severally liable as guarantors of Borrower's debt under the terms of the Guarantee Agreements. (ECF No. 1-4, pp. 4, 7; ECF No. 1-5, pp. 4, 7).

Defendants each signed an Unconditional Guarantee that applied to the first non-revolving line of credit. (ECF No. 1-4, pp. 2–6; ECF No. 1-5, pp. 2–6). Each defendant also signed a Commercial Guaranty that covered all debts that the Borrower owes to the Bank "now existing or hereafter arising or acquired." (ECF No. 1-4, pp. 7–9; ECF No. 1-5, pp. 7–9). The two Commercial Guaranty agreements were also identical. On November 27, 2024, the Bank issued a new additional non-revolving line of credit in the amount of $150,000 ("NRLOC Note #2"). (ECF No. 1-3). At the same time, the Bank extended borrower's revolving line of credit to $350,000 from the initial $300,000 principal. (ECF No. 1-2).

Plaintiff asserts that Borrower failed to make the required payments and defaulted on the Notes, and further claims that it demanded Defendants pay the outstanding balance of the Notes pursuant to the terms of the Guarantee Agreements. (Complaint, ¶¶ 20–31). Plaintiff further avers that because Defendants have not paid the outstanding debts, it is entitled to damages, attorneys'

fees,[1] court costs, and prejudgment and post-judgment interest.  (Complaint, p. 7; Motion, p. 2).

### B.    Procedural Background

On December 11, 2025, the Clerk of the Court issued summonses for Defendants HH International, LLC and Ayodeji Rotimi, which were later returned as executed.  (ECF Nos. 4, 7, 8).  According to the Proof of Service, counsel for the Plaintiff served a copy of the Complaint, summons, and other documents (ECF Nos. 1, 1-1, 1-2, 1-3, 1-4, 1-5, 2, 3, 4, 6) on Defendant Rotimi on December 14, 2025, by leaving the documents with his sister and co-resident, Bunmi Tolu.  (ECF No. 7).  Plaintiff had more trouble serving HH International LLC, and the Proof of Service shows that process servers attempted to serve HH International LLC on four separate occasions before the process servers served the Maryland State Department of Assessments and Taxation with the Complaint, summons, and other documents on January 12, 2026.  (ECF No. 8).

Defendant Rotimi failed to file a responsive pleading within the 21-day period provided by Federal Rules of Civil Procedure 4 and 12(a)(1)(A)(i), namely by January 5, 2026.  Then, on January 23, 2026, the Hon. Theodore Chuang ordered Plaintiff to file a motion for entry of default and to serve a copy of the same upon the Defendant by no later than February 6, 2026, or to show cause by that time as to why such motion would be inappropriate.  (ECF No. 9).

Thereafter, on January 26, 2026, Plaintiff filed a motion for entry of default as to Defendant Rotimi pursuant to Fed. R. Civ. P. 55(a).  (ECF No. 10).  In support of its motion, Plaintiff argued that Defendant's Answer or other response was due on January 5, 2026, yet Defendant failed to respond or otherwise defend against this action.  (*Id.*).  Plaintiff further stated that it had served a copy of the Complaint and other documents on Defendants.  (*Id.*).  On January 28, 2026, the Clerk of the Court entered default as to Defendant Rotimi.  (ECF No. 11).

---

[1] Each agreement, both Unconditional Guarantees and both Commercial Guaranty agreements, provide for the lender to recover attorneys' fees and costs. (ECF Nos. 1-4,1-5).

Furthermore, on February 3, 2026, Plaintiff filed a motion for entry of default as to Defendant HH International LLC pursuant to Fed. R. Civ. P. 55(a) because it similarly failed to respond within the 21-day window, namely by February 2, 2026. (ECF No. 13). Plaintiff further stated that it had served a copy of the Complaint and other documents, as set forth herein previously, on Defendant HH International LLC. (*Id.*). On February 3, 2026, the Clerk of the Court entered default as to Defendant HH International LLC. (ECF No. 14).

On March 16, 2026, Plaintiff filed the Motion, by which it seeks entry of default judgment in the following amounts against the Defendants:

> (a) Unpaid principal balance in the amount of $1,650,252.13, as demanded in the Complaint;
>
> (b) Interest accrued through November 17, 2025, in the amount of $80,273.77;
>
> (c) $5,733.05 in fees and charges[2] on the Notes;
>
> (d) Prejudgment interest which accrues at the combined per diem rate of $441.86 for the period of November 17, 2025, until the date of judgment;
>
> (e) $7,286.70 in reasonable attorneys' fees;
>
> (f) $944.00 in costs; and
>
> (g) Post-judgment interest, calculated at the legal rate.

(Motion, p. 2).[3] In support of the Motion, Plaintiff appended the following documents: (a) a declaration from Mark A. Lampe; (b) a declaration from Alfred Carry; and (c) a copy of the attorneys' invoices. (ECF Nos. 16-1, 16-2). Plaintiff also relies on the Notes attached to the Complaint. (ECF Nos. 1-1, 1-2, 1-3). To date, Defendants have neither Answered, nor otherwise filed any pleading in this case.

---

[2] Fees and Charges include: (1) inspection fees, (2) returned check fees, and (3) late charges. (ECF No. 16-2, ¶ 13).
[3] Plaintiff also filed "Judgement," which included the text of the proposed order to accompany the Motion. (ECF No. 18).

## II.   DISCUSSION

### A.   Default Judgment

Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") governs default judgments.  Upon motion of a party, Rule 55(a) provides that a default judgment can be entered when a defendant fails to "plead or otherwise defend in accordance with [Rule 55]."  *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982).

When evaluating a motion for default judgment, a district court accepts as true the well-pleaded factual allegations in a complaint, other than those pertaining to damages.  *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780–81 (4th Cir. 2001); *see also* Fed. R. Civ. P. 8(b)(6). If a party's factual allegations are unchallenged because of a defendant's unresponsiveness, a district court has the discretion to grant default judgment.   *See* Fed. R. Civ. P. 55(a)–(b); *see also Disney Enters., Inc. v. Delane*, 446 F. Supp. 2d 402, 405–06 (D. Md. 2006) (holding that entry of default judgment was proper because defendant had been properly served with a complaint and did not respond, even after plaintiffs tried repeatedly to contact him); *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005) (concluding that default judgment is appropriate when defendant is "unresponsive for more than a year" after denial of motion to dismiss, even though defendant was properly served with plaintiff's motions for entry of default and default judgment); *Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896 (4th Cir. 1987) (affirming default judgment when defendant lost summons and did not respond within the proper timeframe).

In this case, approximately eight months have passed since the Defendants received the Complaint. (ECF Nos. 7–8).  More than seven months have passed since the Defendant received the motion for entry of default, and more than four months have passed since the Defendant received the instant Motion.  (ECF Nos. 10, 13, 16, 18).  To date, the Defendant has not filed an

opposition nor otherwise defended against this case. Plaintiff has filed proof of service establishing that the Defendant was properly served with the aforementioned pleadings. (ECF Nos. 7–8, 10, 13, 16). Therefore, I find that Defendant has been available to respond or defend against this case, yet has failed to do so. For the reasons set forth below, I recommend that default judgment be entered.

**B.      Jurisdiction**

As a preliminary matter, before deciding liability, the undersigned has an independent obligation to ensure that the district court has subject matter jurisdiction. *See Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010); Fed. R. Civ. P. 12(h)(3).

In this case, diversity of the parties is what gives the district court subject matter jurisdiction, as the Plaintiff is an Ohio company with its principal place of business in Columbus, Ohio, the Defendants are an individual domiciled in Maryland and a limited liability company organized in Maryland, and the amount in controversy exceeds $75,000. (Complaint, ¶¶ 5, 6). *See* 28 U.S.C. § 1332(a).

**C.      Choice of Law**

It is well established that in a federal diversity case, a court must apply the choice of law rules applicable in the forum state. *Klaxon v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 496–97 (1941). In a contract action, Maryland courts typically apply the law of the jurisdiction where the parties made the contract, pursuant to the doctrine of *lex loci contractus*, *Allstate Ins. Co. v. Hart*, 611 A.2d 100, 101 (Md. 1992), "unless there is a choice-of-law provision in the contract." *Higgins v. McDonald*, 826 F. Supp. 3d 640, 649 (D. Md. 2026).

In this case, the Complaint contains no information about where the contracts were executed. (ECF No. 1). However, the Commercial Guaranty agreements signed by Rotimi and

HH International LLC provide that the "Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Ohio without regard to its conflicts of law provisions." Accordingly, Ohio law governs these agreements, and these agreements encompass all of Borrower's indebtedness to the Bank.

**D.    Liability**

As to liability, a district court accepts as true the well-pled allegations in a complaint, other than those pertaining to damages. *Lawbaugh*, 359 F.Supp.2d at 422; *see also Ryan*, 253 F.3d at 780–81; *see also* Fed. R. Civ. P. 8(b)(6). Plaintiff alleges two counts of breach of contract, one count against each Defendant.

*1.    Count I – Breach of Contract Against Rotimi*

Count I of the Complaint asserts a claim of breach of contract against Defendant Ayodeji Rotimi. (Complaint, ¶¶ 20–25).

In order for a plaintiff to establish that a defendant breached a contract, a plaintiff must show "that (1) a contract existed; (2) they fulfilled their obligations under the contract; (3) the other party breached their obligations under the contract; and (4) damages resulted from this breach." *Wells v. Right Choice Contracting, LLC*, 280 N.E.3d 1, 9 (Ohio Ct. App. 2026). Each of these elements, including damages, are "legally essential to a claim for breach of contract." *Brock v. Servpro*, 183 N.E.3d 491, 497–98 (Ohio Ct. App. 2022) (quoting *Phillips v. Columbia Reserve Ltd.*, No. 20CA011634, 2021 WL 1345289, at *5 (Ohio Ct. App. Apr. 12, 2021)). "Damages must arise as a result of the breach and must 'naturally and necessarily flow' from the breach of contract." *Johnson v. U.S. Title Agency, Inc.*, 91 N.E.3d 76, 94 (Ohio Ct. App. 2017) (quoting *Nichols v. Chicago Title Ins. Co.*, 669 N.E.2d 323, 328 (Ohio Ct. App. 1995)).

According to the allegations set forth in the Complaint, the Bank claims that the Defendants guaranteed three Notes for a borrower who defaulted on those Notes. (Complaint, ¶¶ 20–25). Because I am required to accept as true the unchallenged facts of the Complaint, *see Lawbaugh*, 359 F.Supp.2d at 422, Plaintiff has established that a contract existed between Plaintiff and Defendant Rotimi to guarantee payment on the loans that Plaintiff made to Borrower. (Complaint, ¶¶ 20–21). Plaintiff has also established that it fulfilled its obligations under the contract, but Defendant Rotimi breached this obligation by failing to pay when Borrower defaulted. (*Id.*, ¶¶ 20, 22–23). Lastly, Plaintiff has established that damages have arisen from Rotimi's breach because Rotimi has failed to pay the outstanding principle, interest, and other charges due, as alleged in the Complaint. (*Id.*, ¶¶ 20, 24–25).

Accordingly, I find that Plaintiff has established Rotimi's liability for breach of contract, and I recommend that the Motion be granted as to Count I.

### 2.    Count II – Breach of Contract Against HH International LLC

Count II of the Complaint asserts a claim of breach of contract against Defendant HH International LLC. (Complaint, ¶¶ 26–31). As held above, Plaintiff must show "that (1) a contract existed; (2) they fulfilled their obligations under the contract; (3) the other party breached their obligations under the contract; and (4) damages resulted from this breach." *Wells*, 280 N.E.3d at 9.

As above, Plaintiff has successfully demonstrated that a contract existed between Plaintiff and Defendant HH International LLC to guarantee payment on the loans to Borrower. (Complaint, ¶¶ 26–27). Plaintiff has also sufficiently stated that it fulfilled its obligations, but Defendant HH International LLC breached the Guarantee Agreements by failing to pay when the Borrower defaulted. (*Id.*, ¶¶ 26, 28–29). Similarly, Plaintiff has shown that damages have arisen from that

breach. (*Id.*, ¶¶ 26, 30–31).

Accordingly, I find that Plaintiff has established HH International LLC's liability for breach of contract, and I recommend that the Motion be granted as to Count II.

### E.    Damages

Although liability has been established, any allegation concerning the amount of damages is not deemed admitted just because a defendant fails to deny it in a required responsive pleading. Fed. R. Civ. P. 8(b)(6). "With respect to a default judgment, '[c]laims for damages must generally be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed.'" *Trs. of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation, Inc.*, Civ. No. ELH-11-832, 2011 WL 5151067, at \*4 (D. Md. Oct. 27, 2011). If the record supports the damages requested, however, then a court may award damages without a hearing. *See Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, Civ. No. NKM-09-0004, 2009 WL 1872535, at \*2 (W.D. Va. June 30, 2009) (concluding that no evidentiary hearing on damages is needed based on moving party's affidavit and printout submissions establishing amount of damages sought); *DirecTV, Inc. v. Yancey*, Civ. No. MFU-404-11, 2005 WL 3435030, at \*2 (W.D. Va. Dec. 12, 2005) (concluding that where sufficient evidence exist to support damages, "[a] hearing in open court is not required"). The type and amount of damages that may be entered as a result of a party's default are limited to the amount that is demanded in a party's pleadings. Fed. R. Civ. P. 54(c).

### 1.    *Principal; Interest Through November 17, 2025; and Fees*

Plaintiff asserts that the Defendants have failed to satisfy their obligations under the Guarantee Agreements after Borrower defaulted. As a result, Plaintiff seeks payment of the principal balance, interest accrued, and fees charged from the time that Borrower defaulted until

November 17, 2025. (Motion, p. 2). In support of the amount sought, Plaintiff relies upon the declaration of Mark A. Lampe, Vice President of The Huntington National Bank's Financial Recovery Group. (ECF No. 16-1). Mr. Lampe attests that the Bank issued the loans to Borrower, and then that Borrower defaulted on an unspecified date. (*Id.*, ¶¶ 2–4, 9). Mr. Lampe further claims that the amounts due under the Notes currently are as follows:

| Loan | Principal | Interest through 11/17/25 | Fees | Total Indebtedness through 11/17/25 | Daily Interest Rate |
|------|-----------|---------------------------|------|-------------------------------------|---------------------|
| NRLOC Note #1 | $1,155,057.63 | $61,653.10 | $5,160.80 | $1,221,871.53 | $308.54 |
| RLOC Note | $349,926.83 | $15,689.43 | $470.18 | $366,086.44 | $93.47 |
| NRLOC Note #2 | $145,267.67 | $2,931.24 | $102.07 | $148,300.98 | $38.90 |

(*Id.*, ¶ 13–14).

This Court has previously determined that copies of loan documents and an affidavit from the lender can be sufficient to uphold a default judgment award. *Dominion Fin. Servs. LLC v. Pavlovsky*, 673 F. Supp. 3d 727, 751 (D. Md. 2023). Accordingly, I find that Plaintiff has the right to collect the principal, interest, and fees owed from the Defendant, reflected in the Notes and the affidavit from Mark A. Lampe. These outstanding debts, as of November 17, 2025, total $1,736,258.95.

### 2. *Prejudgment and Post-judgment Interest*

Plaintiff also seeks prejudgment interest computed starting November 17, 2025, calculated at the "per diem interest rate" under the Notes. The Notes each have a variable interest rate that shifts with the Wall Street Journal Prime Rate. (ECF No. 1-1, pp. 2–3; ECF No. 1-2, p. 2; ECF No. 1-3, pp. 2–3). In sum, Mr. Lampe declared that the per diem interest rate on the notes, collectively, is $441.86. (ECF No. 16-1, ¶ 14).

The law in this Circuit provides that prejudgment interest in a case involving diversity jurisdiction is to be analyzed consistent with Maryland law. *See Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 633 (4th Cir. 1999). Specifically, prejudgment interest:

> is allowable as a matter of right when "the obligation to pay and the amount due had become certain, definite, and liquidated by a specific date prior to judgment so that the effect of the debtor's withholding payment was to deprive the creditor of the use of a fixed amount as of a known date."

*Buxton v. Buxton*, 770 A.2d 152, 165 (2001) (citations omitted). The legal rate of prejudgment interest in Maryland is six percent per annum. Md. Const. art. III, § 57; *see, e.g., Dominion Fin. Servs., LLC*, 673 F. Supp. 3d at 752–53 (exercising discretion to award prejudgment interest of six percent per annum, in accordance with the legal rate of interest set forth in Md. Const. art. III, § 57); *Lighting Retrofit Int'l, LLC v. Constellation NewEnergy, Inc.*, Civ. No. 19-cv-02751-SAG, 2023 WL 2306962, at *13 (stating that Md. Const. art. III, § 57 "establish[es] the legal rate of interest in Maryland").

However, parties can agree to a higher interest rate by contract. *See, e.g., Md. Nat'l Bank v. Cummins*, 588 A.2d 1205, 1219 (Md. 1991); *MLT Enters., Inc. v. Miller*, 694 A.2d 497, 505 (Md. Ct. Spec. App. 1997). A court in this District has permitted plaintiffs to collect interest that is contractually agreed upon when the evidence supports the damages, including "the amount owed on each Note, the date such amount was due, and the default interest rate thereon." *Frosted Apple, LLC v. Coastal Lab'ys, Inc.*, 757 F. Supp. 3d 636, 641–42 (D. Md. 2024).

The Guarantors are not entitled to any notice of default under the Guarantee Agreements. (ECF No. 1-4, pp. 3, 7; ECF No. 1-5, pp. 3, 7). While Plaintiff failed to allege when Defendants were notified that Borrower failed to pay—and further has failed to allege precisely when the Guarantors defaulted on the Guarantee Agreements—the Notes, Guarantee Agreements, and Declaration of Mark Lampe are

11

sufficient to determine that there was "an obligation to pay and an amount due" that was "certain." *Buxton*, 770 A.2d at 165.  Furthermore, Maryland law does not require this date to be the date of default; it only requires a specific date which represents "the earliest date on which the record adequately supports [the plaintiff's] entitlement to recover a definite outstanding balance on the Loans." *Dominion Fin. Servs., LLC*, 673 F. Supp. 3d at 753.  Accordingly, I find that Plaintiff is entitled to prejudgment interest from November 17, 2025, through the date of entry of judgment, as requested in the motion because the amount due under the Notes and Guarantee Agreements on that date is certain and definite according to Mr. Lampe's declaration.

However, I also find that although the parties have contracted to an interest rate that is different from the legal rate of prejudgment interest, the record contains insufficient evidence to support the Bank's alleged per diem interest rate.  I find instructive *Frosted Apple, LLC v. Coastal Laby's, Inc.*, 757 F. Supp. 3d 636 (D. Md. 2024).  In that case, the court awarded the plaintiff prejudgment interest at the default interest rate of "8.33% per 30 days" when the notes and the declaration from the lender supported that interest rate.  *Id.* at 641–42.  There, the default interest rate was clearly set forth in the notes and no computation was required to determine what the rate would be.  *Id.* at 639 ("All three Notes provided that, upon a default, [the defendant] would be required to pay interest at a default rate of 8.33% per 30 days.").

Here, that is not the case.  Mr. Lampe's declaration does not identify the rates of interest following default on any of the Notes, nor does that declaration explain how the Bank arrived at the per diem rate, given that the interest owed on the Notes is calculated using a variable interest rate. (ECF Nos. 1-4, 1-5, 16-1).  The variable interest rate, as identified in the Notes, changes each quarter with the prime rate published in the Wall Street Journal. (ECF No. 1-1 through 1-3).  Specifically, the first non-revolving line of credit and the revolving line of credit are to be paid at the Wall Street Journal Prime rate plus an additional 2.5%, while the second non-revolving line of credit requires an additional 2.75% above the

12

Wall Street Journal Prime rate. (ECF No. 1-1 through 1-3). Furthermore, the revolving line of credit increases the interest rate by an additional 3% following default. (ECF No. 1-2). However, the record is devoid of any information about the Wall Street Journal Prime rate that Plaintiff used to calculate the per diem interest owed following Defendants' default. As a result, there is no evidentiary basis in the record to support the conclusion that the per diem interest rate was computed in accordance with the Notes.

In sum, I recommend that the Court award prejudgment interest at the legal rate because Plaintiff has failed to properly support the interest rate that it alleges Defendants owe. *See Ryan*, 253 F.3d at 780–81. Accordingly, the request to award prejudgment interest at the per diem rate is **DENIED**.[4]

Regarding post-judgment interest, 28 U.S.C. § 1961 sets forth the rate at which such interest shall be allowed in this civil case, which takes into account the date of entry of judgment. Accordingly, I recommend that Plaintiff be awarded post-judgment interest calculated at the legal rate from the date of entry of judgment.

### 3. Attorney's Fees

As a preliminary matter, attorneys' fees are recoverable under the Notes and the Guarantee Agreements because the Unconditional Guarantee and Commercial Guaranty agreements both contain specific provisions that allow the Bank to seek these fees and costs. (ECF No. 1-4, pp. 4, 8; ECF No. 1-5, pp. 4, 8). While a contract provision providing for the award of attorney's fees to the prevailing party is valid and enforceable in Maryland, courts must examine fee award requests for "reasonableness." *Myers v. Kahoe*, 892 A.2d 520, 532 (Md. 2006); *see also Monmouth Meadows Homeowners Ass'n, Inc. v. Hamilton*, 7 A.3d 1, 5 (Md. 2010); *SunTrust Bank v. Goldman*, 29 A.3d 724, 730 (Md. Ct. Spec. App. 2011) ("Current law allows a court to grant only

---

[4] Alternatively, if Plaintiff seeks prejudgment interest to be computed at a higher rate, I recommend that the Court order Plaintiff to supplement the record with proof that its interest rate computation was made in accordance with the Notes, such that the contract entitles Plaintiff to interest above the legal rate. *See Frosted Apple, LLC*, 757 F. Supp. 3d at 641–42.

those attorney's fees it finds reasonable.").

It is well settled that "the amount of attorney's fees to be awarded in any case is "left to the discretion of the [court]." *Johnson v. O'Connell & Laurence, Inc.*, Civ. No. DKC-21-2468, 2022 WL 1620014, at *2 (D. Md. May 23, 2022).  To calculate the award of attorneys' fees, a court must first determine the lodestar amount, which involves two steps.  First, a court analyzes the "reasonable hourly rate," and second, the court considers that rate and then "[multiplies it] by the hours reasonably expended."  *Grisson v. The Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008).  The lodestar amount is determined by applying several factors.  The Fourth Circuit has found that a court's discretion in finding the reasonable hourly rates and hours expended should be guided by the following twelve factors, which were articulated in *Johnson v. Ga. Highway Express, Inc.* 488 F.2d 714, 717–19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron,* 489 U.S. 87 (1989):

> (1) the time and labor expended; (2) novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009).

The Motion requests attorneys' fees in the amount of $7,286.70.[5]  (Motion, p. 2).  Plaintiff relies on the Declaration of Alfred Carry and a copy of the invoices charged to Plaintiff to support this fee.  (ECF No. 16-2).  This request is predicated on 24.7 hours of work billed at a reduced rate

---

[5] The Motion contains an error in the billing calculation, as a fee ending in seventy cents is not possible with the rate billed.  Each unit (0.1 hours) is worth $29.50 at this rate.  (Motion, p. 2; ECF No. 16-2, ¶¶ 9–11).

14

of $295 per hour.  The Motion includes the following events, hours, and fees requested:

| ATTORNEYS' FEES BY ATTORNEY | | | |
|---|---|---|---|
| **Attorney** | **Hours** | **Rate Billed[6]** | **Total** |
| Alfred D. Carry | 21.1 | $295 | $6,224.50 |
| Stephen M. Montgomery | 3.6 | $295 | $1,062.00 |
| **Total Attorneys' Fees** | **24.7** | **$295** | **$7,286.50** |

| ATTORNEYS' FEES BY TASK | | |
|---|---|---|
| **Description** | **Total Hours** | **Fees Requested** |
| Pleadings | 6.2 | $1,829.00 |
| Service of Process | 4.2 | $1,239.00 |
| General Case Management | 1.7 | $501.50 |
| Default Entry Proceedings and Motion for Default Judgment | 12.6 | $3,717.00 |
| **Total Attorneys' Fees** | **24.7** | **$7,286.50** |

i.    Hourly Rates

To determine the reasonableness of an attorney's hourly rate, courts analyze whether the rate sought is consistent with the rate that prevails in the community for "similar legal services by lawyers of reasonably comparable skill, experience and reputation."  *Blum v. Stenson*, 465 U.S. 886, 890 n.11 (1984).  This is the first part of the lodestar calculation.  While a court may rely upon affidavits from attorneys opining on the reasonableness of requested rates, *see, e.g.*, *Poole ex. rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 509–10 (D. Md. 2000), a court may also, as part of its analysis, rely upon its knowledge of the Maryland market.  *De Paredes v. Zen Nails Studio LLC*, 134 F.4th 750, 754 (4th Cir. 2025).

In this District, courts often begin their analysis with "United States District Court for the District of Maryland: Local Rules, Appendix B, Rules and Guidelines for Determining Attorneys'

---

[6] Alfred Carry's declaration listed the standard billing rates for himself and Mr. Montgomery as $725 per hour and $605 per hour, respectively.  (ECF No. 16-2, ¶¶ 9–10).

15

Fees in Certain Cases" ("the Guidelines" or "Loc. R. App. B").  The Fourth Circuit has recently held that a court "may consider, but is not bound by," the Guidelines.  *De Paredes,* 134 F.4th at 754 (citing *Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219, 229 (4th Cir. 2009)).  Thus, when a court is faced with a fee petition and is determining whether a fee rate is "reasonable," it may not treat the Guidelines as "'presumptively reasonable' and require special justification to deviate from [them]."  *De Paredes*, 134 F.4th at 754 (citations omitted).  Rather, a court "must consider all relevant evidence to determine 'the prevailing market rates in the relevant community'. . . including lawyer affidavits, fee awards in similar cases, general surveys, fee matrices, and even its 'own personal knowledge.'"  *Id.*

In this case, the Fitzpatrick Matrix aligns with the attorneys' billable rates.  I find that Mr. Alfred D. Carry has 15 years of experience and that Mr. Stephen M. Montgomery has 19 years of experience.  (ECF No. 16-2, p. 3).  I also find that they billed $295 per hour, which is well below the hourly rate for attorneys with their respective levels of experience, even when accounting for the differences between the Maryland and DC markets.  (*Id.*).  Accordingly, considering this evidence and the other *Johnson* factors, the hourly rates are reasonable because the rate is consistent with prevailing rates in the Maryland legal community.

                ii.       Hours Expended

As held above, at the second step of the lodestar process, a court must determine whether the number of hours worked by counsel is reasonable.

The Motion is supported by a detailed log itemizing all legal tasks performed and billed, along with the Declaration of Alfred D. Carry explaining the hours billed.  (ECF No. 16-2).  Mr. Carry and Mr. Montgomery spent 6.2 hours preparing the pleadings, 4.2 hours attempting to effectuate service of process on Defendants, 1.7 hours on general case management and client

16

communication, and 12.6 hours on obtaining an entry of default and preparing this Motion for Default Judgment. (*Id.* at 5–18). In considering the *Johnson* factors, I find that the attorneys spent a reasonable number of hours on this matter, especially when taking into account the amount in controversy in the instant case.

In sum, Plaintiff's requested attorneys' fees are reasonable in terms of the rate and hours expended. The lodestar amount, $7,286.50, is likewise reasonable. However, due to the error when calculating the total fee award, the district court should award Plaintiff's attorneys' fees in the amount of $7,286.50, as opposed to $7,286.70.

### 4. Costs

Plaintiff also seeks an award of costs in the amount of $944.00 for court and process server fees. (Motion, p. 2). Fed. R. Civ. P. 54(d)(1) makes clear that costs should be awarded to the prevailing party. In addition, Local Rule 109.1(b) makes clear that a party seeking costs is entitled to a filing fee. Such fee is compensable under 28 U.S.C. §1920. The Motion requests costs in the amount of $944.00, which include:

| COSTS | |
|---|---|
| **Description** | **Fees Requested** |
| Filing Fee | $405.00 |
| Pro Hac Vice Admission Fee | $100.00 |
| Service of Process Fees | $439.00 |
| **Total Costs** | **$944.00** |

In this case, the filing fee is $405.00. This fee is allowed under 28 U.S.C. § 1920(1). However, in the District of Maryland, pro hac vice fees are generally not taxable costs. United States District Court for the District of Maryland, Guidelines for Bills of Costs, § III.12 (D. Md. 2022); *Schmitz-Werke GMGH + Co. v. Rockland Indus., Inc.*, 271 F. Supp. 2d 734, 735 (D. Md. 2003) ("The *pro hac vice* fee is an expense of counsel, not the client, and thus not recoverable.").

17

Accordingly, the request to award the pro hac vice admission fee is **DENIED**.

Finally, if a party seeks fees other than the filing fee, then the request shall be supported by sufficient information for the court to be able to determine the basis for the fee. Loc. R. 109.1(b). Here, the fees expended to serve Defendants are adequately detailed in Mr. Alfred Carry's invoices, the declaration, and the record as a whole, which provides a sufficient basis for the fees expended, and I find that these fees are reasonable. *See* Guidelines for Bills of Costs, § II.C.b. Furthermore, these costs fall within the scope of the Guarantee Agreements' terms, in which Defendants promised to pay "all expenses Lender incurs to enforce this Guarantee" which include "Lender's attorneys' fees and Lender's legal expenses," and which further require Defendants to pay "all court costs and such additional fees as may be directed by the court." (ECF No. 1-4, pp. 4, 8; ECF No. 1-5, pp. 4, 8).

In sum, I recommend an award to the Plaintiff for costs in the amount of $844.00 for the filing fee and the service of process fees but not including the pro hac vice fee.

## III. CONCLUSION

In sum, I respectfully recommend that the district court:

(1) **GRANT IN PART AND DENY IN PART** Plaintiff's "Motion for Default Judgment Against Defendants" (ECF No. 16) as set forth herein.

(2) Enter judgment in favor of the Plaintiffs, jointly and severally against Defendants, in the following amounts:

   a. Principal, interest accrued through November 17, 2025, and fees in the amount of $1,736,258.95;

   b. Attorneys' fees in the amount of $7,286.50;

   c. Costs in the amount of $844.00;

    d.   Prejudgment interest from November 17, 2025, until the date of entry of judgment, calculated at the legal rate; and

    e.   Post-judgment interest, calculated at the legal rate.

Dated: August 7, 2026

                                              */s/*
                                  The Honorable Gina L. Simms
                                  United States Magistrate Judge